IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMIEL L. WILLIAMS and
KEVIN WILLIAMS,
   Plaintiffs
                                  No. 1:23-cv-00667

   v.
                                  (Judge Rambo)

C.O. DIVEN, et al.,
   Defendants

## MEMORANDUM

Pro se Plaintiff Jamiel L. Williams ("Plaintiff"), who is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), is currently incarcerated at State Correctional Institution Huntingdon ("SCI Huntingdon") in Huntingdon, Pennsylvania. He commenced the above-captioned action by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), asserting violations of his constitutional rights while incarcerated there. (Doc. No. 1.) In accordance with the Prison Litigation Reform Act,[1] the Court has conducted an initial review of the complaint. For the reasons set forth below, the Court will dismiss the complaint, but will grant Plaintiff leave to file an amended complaint.

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

I.      BACKGROUND

      A.      Procedural Background

On April 21, 2023, Plaintiff filed his Section 1983 complaint naming himself and Kevin Williams, a fellow inmate at SCI Huntingdon, as Plaintiffs. (Doc. No. 1 at 1.) Plaintiff, however, has since filed a request with the Court, stating that he "wishes to proceed [in] the above-captioned civil rights action without 2nd Plaintiff, Kevin Williams[.]" (Doc. Nos. 6; 11 at 1 (explaining to the Court that "Kevin Williams, is [the] only witness to [the] case, although [Plaintiff] put him as a [p]laintiff, it was wrong").) Thus, for purposes of this Memorandum, the Court will treat Plaintiff's complaint as being filed on his behalf only.[2]

Named as Defendants are the following individuals, all of whom appear to be employed by the DOC and to have worked at SCI Huntingdon during the period of time relevant to Plaintiff's claims: (1) Corrections Officer Diven; (2) Corrections Officer Plocinik; (3) Corrections Officer Brindle; (4) Sergeant Weakland; (5) Lieutenant S. Grassmyer; and (6) Superintendent/Facility Manager J. Rivello. (Doc. No. 1 at 1–3.)

In addition to the complaint, Plaintiff also filed a certified motion for leave to proceed in forma pauperis, as well as his prisoner trust fund account statement. (Doc. Nos. 8, 9.) The Court, having reviewed Plaintiff's motion and trust fund

---

[2] Plaintiff shall correct this mistake in his amended complaint, should he file one.

account statement, will grant him leave to proceed in forma pauperis and will deem his complaint filed.

Shortly after submitting his financial documentation to the Court, Plaintiff filed, on June 6, 2023, a motion seeking to enter documentary evidence into the record. (Doc. Nos. 11, 11-1.) Plaintiff alleges that this evidence supports the claims that he has asserted in this action. (Doc. No. 11 at 1.) The Court, having reviewed Plaintiff's motion and supporting documentary evidence, will grant his motion and direct the Clerk of Court to docket the attached exhibit as a separate entry on the Court's docket.

### B. Factual Background

In his complaint, Plaintiff alleges that, on December 21, 2022, at SCI Huntingdon, he was "called for legal mail[,]" but that another inmate by the name of Kevin Williams was given Plaintiff's "pass" without "inmate identification" being checked by Defendants Diven, Plocinik, and Brindle. (Doc. No. 1 at 2.) As a result, Plaintiff contends that these Defendants allowed Kevin Williams to receive his legal mail. (Id. at 4; id. at 2 (stating that these Defendants "assisted in identy [sic] theft").) Plaintiff also alleges that Defendant Weakland made a "falsified statement" in an attempt to "cover up" this mistake. (Id. at 4.)

In addition, Plaintiff asserts that Defendant Rivello "could have investigated and overturned [the] grievance[,] but he didn't nor [did he] view video of [the]

3

incident." (Id.)  Plaintiff similarly asserts that Defendant Grassmyer "claimed he investigated, but didn't[.]" (Id.)  In connection with all of these allegations, Plaintiff contends that "[e]veryone involved has malicious intent to cause [him] harm due to [him] filing [a] previous claim[.]" (Id.)  More specifically, Plaintiff appears to allege that Defendants are retaliating against him because he filed a "PREA claim of sexual assault on [a] co-worker[.]" (Id.)

Based upon all of these allegations, Plaintiff asserts that Defendants violated his First Amendment rights. (Id.)  As for relief, he seeks: a change to "the legal policy procedures in [the DOC];" authorization to file a "petition to Court concerning legal mail given to [inmate Kevin Williams];" and punitive damages. (Id.)  In addition, Plaintiff seeks a jury trial, at which he would like to call inmate Kevin Williams as a witness.[3] (Id.)

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2), district courts are required to review complaints in civil actions where a litigant is proceeding in forma pauperis. See 28 U.S.C. § 1915(e)(2).  If the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, then the district court must dismiss the complaint.  See

---

[3] Although unclear, Plaintiff appears to be seeking a "petition to Court" in order to call Kevin Williams as witness. See, e.g., (Doc. No. 6 at 1).

4

id. In dismissing claims under § 1915(e)(2), district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating the plausibility of a complaint, the Court is required to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." See Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010); Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017) (stating that the court "must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]" (citation and internal quotation marks omitted)).

Additionally, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se "is to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).

5

## III. DISCUSSION

Plaintiff has filed his complaint pursuant to the provisions of Section 1983, asserting violations of his rights under the First Amendment. (Doc. No. 1.) Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983. Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

In order to plausibly state a claim under Section 1983, Plaintiff must sufficiently allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual

6

knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).

Additionally, in the context of Section 1983, the United States Court of Appeals for the Third Circuit has recognized two theories of supervisory liability. See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). Under one theory, a supervisor can be held liable if it is shown that he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." See id. (citation and internal quotation marks omitted) (alteration in original); Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016). Under the other theory, a supervisor can be held liable if it is shown that he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." See A.M. ex rel. J.M.K., 372 F.3d at 586; Parkell, 833 F.3d at 330.

### A. Defendants Rivello and Grassmyer

In the complaint, Plaintiff's only allegation against Defendant Rivello, the Superintendent/Facility Manager at SCI Huntingdon, is that he "could have investigated and overturned [the grievance decision], but didn't nor [did he] view video of [the] incident." (Doc. No. 1 at 4.) Similarly, Plaintiff's only allegation against Defendant Grassmyer, a supervising corrections officer, is that he "claimed he investigated, but didn't[.]" (Id.) Thus, it appears that Plaintiff's allegations against these Defendants are based solely upon their alleged involvement in the grievance procedures at SCI Huntingdon.

A prisoner, however, cannot maintain constitutional claims against prison supervisors based solely upon allegations that the supervisors failed to adequately investigate or act favorably upon the prisoner's grievance, which complains of events that have already occurred and are in the past. See Mack v. Warden Loretto FCI, 839 F.3d 286, 295 (3d Cir. 2016) (affirming the district court's decision to dismiss the prisoner-plaintiff's claims against the warden and the deputy warden because the "complaint makes it clear that [plaintiff] only spoke to these defendants after the alleged" conduct of their subordinate had occurred and, thus, the complaint provided no basis to infer that those supervisory defendants were personally involved in the asserted constitutional violation); Robles v. Casey, No. 10-cv-02663, 2011 WL 398203, at *2 (M.D. Pa. Feb. 3, 2011) (concluding that plaintiff had not

8

shown personal involvement where "plaintiff's grievance only reported violations that had occurred in the past, not violations that were ongoing which Defendants could have remedied"). Accordingly, because this type of alleged involvement is insufficient to establish personal involvement for purposes of Section 1983, the Court will dismiss Plaintiff's Section 1983 claims against Defendants Rivello and Grassmyer.

### B. Defendants Diven, Plocinik, Brindle, and Weakland

In the complaint, Plaintiff asserts a First Amendment retaliation claim against Defendants Diven, Plocinik, Brindle, and Weakland. (Doc. No. 1.) In order for a prisoner-plaintiff to plausibly state a First Amendment retaliation claim, he must allege three (3) elements. First, he must allege that he was engaged in constitutionally protected conduct. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, he must allege "that he suffered some 'adverse action' at the hands of prison officials." See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing that the action "was sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." See id. (quoting Allah, 229 F.3d at 225). Third, he must allege that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." See id. at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). Because "motivation is

9

almost never subject to proof by direct evidence," a prisoner-plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive." See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). The prisoner-plaintiff "can satisfy his burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." See id. (footnote omitted). If a prisoner-plaintiff establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." See id. at 334. And, if the prison officials can make this showing, it defeats the prisoner-plaintiff's retaliation claim. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

Here, Plaintiff alleges that, on December 21, 2022, Defendants Diven, Plocinik, and Brindle allowed his legal mail to be given to Kevin Williams, a fellow inmate at SCI Huntingdon. (Doc. No. 1 at 2.) Plaintiff further alleges that Defendant Weakland made a "falsified statement" in an attempt to "cover up" this mistake. (Id. at 4.) In connection with these allegations, Plaintiff seems to suggest that these Defendants were retaliating against him because he had filed a "PREA claim of sexual assault on [a] co-worker." (Id.)

Even assuming that Plaintiff could show the first two (2) elements of his retaliation claim (that he engaged in constitutionally protected conduct by filing a PREA claim and that he suffered an adverse action of having his legal mail being given to another inmate), the Court finds that Plaintiff has failed to establish that his constitutionally protected conduct was a substantial or motivating factor in the decision of these Defendants to allow Plaintiff's legal mail to be given to Kevin Williams. Specifically, Plaintiff has not alleged an unusually suggestive temporal proximity between the asserted protected activity and the allegedly retaliatory action, or a pattern of antagonism. See Watson, 834 F.3d at 422. Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claim against Defendants Diven, Plocinik, Brindle, and Weakland.

## C. Leave to Amend

The final issue is whether Plaintiff should be granted leave to amend his complaint. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id. The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court finds that granting Plaintiff leave to amend his Section 1983 claims against Defendants Rivello and Grassmyer would be futile because their alleged involvement (i.e., their secondary review of Plaintiff's inmate grievance and/or grievance appeal) is not sufficient to establish personal involvement in a Section 1983 action. The Court cannot say, however, that granting Plaintiff leave to amend with respect to his First Amendment retaliation claim against Defendants Diven, Plocinik, Brindle, and Weakland would be futile. As a result, Plaintiff will be permitted an opportunity to amend his retaliation claim against these Defendants.

Plaintiff is advised that the amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. The amended complaint

shall set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Finally, Plaintiff is cautioned that neither conclusory allegations nor broad allegations will set forth a cognizable claim.

## IV.   CONCLUSION

To conclude, the Court will dismiss Plaintiff's complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2). The Court will grant Plaintiff leave to file an amended complaint. An appropriate Order follows.

Dated: July 13, 2023                                     s/ Sylvia H. Rambo
                                                                      SYLVIA H. RAMBO
                                                                      United States District Judge